


**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| TAMMY GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-0974-JEO |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Tammy Griffin ("Griffin" or "Plaintiff") brings this action pursuant to 28 U.S.C.§ 405(g), seeking review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for Disability Insurance Benefits. (Doc. 1).[2] She also has filed a motion to remand this case to the Commissioner for further proceedings pursuant to Social Security Ruling ("SSR") 16-3p (2016 WL 1119029 (2016)), which

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc. __" are to the record numbers assigned by the Clerk of the Court. Page references are to the electronic numbers at the top of the page assigned by the Clerk.

modified the criteria for determining the intensity and persistence of a claimant's symptoms. (Doc. 11). Upon review of the record, the court finds that the Commissioner's decision is due to be affirmed and the motion to remand is due to be denied.

## I. PROCEDURAL HISTORY

Griffin filed an application for a period of disability and Disability Insurance Benefits ("DIB") with the Social Security Administration on July 13, 2012.[3] (R. 27, 37, 130-137, 162).[4] The Social Security Administration initially denied Griffin's claim on August 31, 2012. (R. 73-86). Griffin then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 87-88). On October 9, 2013, the ALJ conducted a hearing, at which Griffin, her attorney, and a vocational expert all appeared. On November 22, 2013, the ALJ issued his decision denying Griffin's claim. (R. 27-37). On January 9, 2014, Griffin requested that the Social Security Appeals Council review the ALJ's decision. (R. 10-13). The Appeals Council denied Griffin's request for review on April 11, 2015, which finalized the Commissioner's decision. (R. 1-7). On June 10, 2015, Griffin filed this action for judicial review under 42 U.S.C. § 405(g).

---

[3] The application for disability benefits is located in the record at R. 130-37. It is dated July 24, 2012. The Disability Report from the Field Office lists the Protective filing date as July 13, 2012. (R. 162). The ALJ cites July 13, 2012, as the filing date in his decision. (R. 27, 37).

[4] References herein to "R.__" are to the administrative record found at document 4 in the electronic file.

## II. STANDARD OF REVIEW

This court must determine (1) whether the Commissioner's decision is supported by the substantial evidence, and (2) whether the Commissioner applied the proper legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is what "a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Accordingly, the court reviews the ALJ's factual findings with deference. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). By contrast, the court reviews questions of law *de novo*, applying close scrutiny to the ALJ's legal conclusions. *Id.* In determining whether the Commissioner's decision is supported by new evidence, the court must consider new evidence submitted to the Social Security Appeals Council. *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

## III. STATUTORY FRAMEWORK

To qualify for DIB a claimant must establish disability on or before the date she was last insured for disability insurance benefits. *See* 42 U.S.C. §§ 423(a)(1)(E) & (c); 416(i)(3). The term "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).

To determine the claimant's disability status, the Commissioner employs a five-step evaluation of the evidence in the record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Commissioner must determine whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment that (3) meets CFR list criteria and duration requirements; (4) has the residual functional capacity to perform the requirements of her past relevant work, or (5) is capable of doing any other work. *See* 20 C.F.R. § 404.1512(a) & 404.1520(a). At step four, the claimant must demonstrate that she cannot perform her past relevant work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If the claimant can still do her past relevant work, she will be deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

## IV. FINDINGS OF THE ALJ

Griffin was 45 years old at the time of the ALJ's decision. (R. 31). Griffin has a high school level education. (*Id.*) At the administrative hearing, Griffin testified that she last worked in July 2012 when she tried to return to work cleaning houses. (*Id.*) Before July 2012, Griffin last worked in March 2012 as an associate inspecting auto parts. (*Id.*) Griffin's past relevant work experience includes delivering auto parts, road construction, finishing columns and porch railings,

waiting tables and cooking, gas station attendant, and substitute teaching. (*Id*.) Applying the five-part test, the ALJ found as follows: First, Griffin did not engage in substantial gainful activity since March 9, 2012, the alleged onset date of her disability. (R. 30). Second, Griffin had the following "severe" medically determinable physical impairments: degenerative disk disease, degenerative joint disease, thoracic outlet syndrome, history of cervical fusion, fibromyalgia, and migraines. (R. 29). Third, none of Griffin's impairments met the Code of Federal Regulations list requirements. Fourth, Griffin had the residual functional capacity ("RFC") to perform light, unskilled work, except work that includes climbing ropes, ladders, or scaffolds; unprotected heights; hazardous machinery; more than occasional stooping, crouching, crawling, or kneeling; and more than occasional ambulation over uneven surfaces. (R. 30). Accordingly, the ALJ concluded that Griffin was not disabled at any time from March 9, 2012, through November 22, 2013, the date of his decision. (R. 37).

## V. DISCUSSION

Griffin alleges that the Appeals Council erred by failing to considerer the additional evidence that was presented to it without considering whether the records were chronologically relevant. (Doc. 6 at 3, 14-16). Griffin further alleges that the ALJ's decision is not based on substantial evidence when the additional evidence is considered. (*Id*. at 16-18). Griffin also has moved for an order of

remand, arguing that the recent passage of SSR 16-3p, which became effective March 28, 2016, renders the ALJ's consideration of credibility in his subjective symptom analysis improper. (Doc. 11). Griffin asks this court to remand the case to allow the ALJ to review her claim, consider the additional evidence, and apply the new standard set forth in SSR 16-3p. (*Id*.)

**A. NEW EVIDENCE**

The applicable standard is clear:

> [A] claimant is generally allowed to introduce new evidence at each stage of the process and the Appeals Council must consider the evidence if it is new, material, and chronologically relevant. *Ingram v. Comm'r of Soc. Sec*., 496 F.3d 1253, 1261 (11th. Cir. 2007). Evidence is material under this standard if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). In order to be chronologically relevant, the new evidence must "relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2016). Evidence is not chronologically irrelevant solely because it is dated after the ALJ decision if it still relates back to the relevant period of time. *See Washington v. SSA*, 806 F.3d 1317, 1322 (11th Cir. 2015) (holding that treating physician's opinion give[n] after ALJ decision was still chronologically relevant because Plaintiff told the doctor he had experienced hallucinations before and the doctor examined medical records from the relevant period). When the claimant presents new evidence, the Appeals Council must grant review when the ALJ's decision is against the weight of the current record. *Harrison v. Comm'r of Soc. Sec*., 569 F. Appx. 874, 881 (11th Cir. 2014).

*Yates v. Colvin*, 2016 WL 4447464, *6 (N.D. Ala. Aug. 24, 2016) (J. Proctor).[5]

---

[5] Unpublished opinions of district courts or courts outside the Eleventh Circuit are not considered binding precedent; however, they may be cited as persuasive authority.

In *Yates*, the claimant offered additional medical records from her doctor during her appeal to the Appeals Council. The records evidenced a worsening headache, concern over the increased size of an existing cyst, and uncontrolled depression after the date of the ALJ's decision. *Id*. at *7. Rejecting her claim, Judge Proctor found that there was no indication that the doctor relied on medical records from the relevant period. *Id.* Judge Proctor further found that even if the additional evidence was chronologically relevant, it was not material "as there was not a reasonable possibility that it would change the administrative outcome." *Id*.

**1. The Appeals Council properly declined review based on the additional evidence submitted in this case.**

The new evidence that was presented to the Appeals Council in this case consists of (1) a "Physical Capabilities Form" dated February 13, 2014, from Dr. Byron Nelson (R. 9) and a March 19, 2012 examination form from Dr. Myron Wilson (R. 370-72); (2) a March 17, 2014 MRI report from Ft. Payne Imaging (R. 8); and (3) Gadsden Regional Medical Center records from August 15, 2000 through August 3, 2010. (Doc. 6 at 2; R. 223-25, 342-69). The Appeals Council reviewed the foregoing documents and determined that the records from Dr. Wilson and Gadsden Regional did not provide a sufficient basis for altering the ALJ's determination and that the Ft. Payne Imaging report and Dr. Nelson's report were "about a later time" and did "not affect the decision" concerning Griffin's disability on November 22, 2013. (R. 2). Griffin argues that the Appeals Council

erred because it did not consider whether the imaging report and the "Physical Capacities Form" were chronologically relevant. (Doc. 6 at 2). She further argues that these records substantiate her claims of debilitating pain and severe limitations. (*Id*. at 16). The Commissioner responds that the records did not concern the relevant period before the disability date and even if they are chronologically relevant, they do not demonstrate that the ALJ's decision was erroneous. (Doc. 7 at 4-12).

**a. Background**

Griffin was injured on March 9, 2012, when "she felt a pop in her back moving a bin of parts while at work." (R. 33). Medical records from her immediate visit to the Dekalb Regional Medical Center, including x-ray imaging of her lumbar spine, revealed "[t]he clinical impression [of] acute muscular spasm and acute lumbar strain." (R. 32). A subsequent MRI on March 23, 2012, showed normal lordotic alignment, unremarkable paravertebral soft tissues, and normal marrow signal in her lower spine. (R. 296). Her L1-5 discs remained preserved, and she had mild facet hypertrophy at L4-L5. (*Id*.) She had modest desiccation at L5-S1, and a small disc bulge and endplate bar. (*Id*.) The overall impression was modest L5 degenerative disc disease with left eccentric forminal narrowing, no focal disc protrusion or herniation, and facet hypertrophy of the lumbar spine. (R. at 32, 296).

Griffin underwent physical therapy in April 2012. During therapy she described her pain level as 7 at rest and 10 with activity. (R. 32). She also complained that pain limited her lumbar motion. (*Id*.)

During her May 2, 2012 examination at St. Vincent's Orthopedics, she reported lower back pain. Her physical examination revealed no apparent distress and minimal pain on extension. (R. 33, 243). "The impression was low back pain with possible mild chemical radiculitis in the left lower extremity." (*Id*. at 33, 244). She again reported back pain during her May 9, 2012 examination. She stated that she had been back at work, but she was not able to tolerate the pain from standing on concrete. (R. 242). Dr. J. Todd Smith wanted her to continue at work, but with a restriction of no "long standing or walking." (*Id*.) Her June 5, 2012 visit revealed she had "severe degenerative changes at L5-S1." (*Id.* at 241). She was diagnosed with "chemical radiculitis left lower extremity, and [a] small disc herniation at the L5-S1 level with degenerative disc disease." (*Id.*) However, Dr. Smith continued her at work with the same restrictions. A mere three weeks later, "she was described as having severe collapse at L5-S1." (*Id*. at 33, 240). The visit records also note she had "significant L5-S1 degenerative disc disease, low back pain, and left lower extremity radicular symptoms." (*Id.*). Griffin was also noted as being at her "maximum medical improvement" on July 11, 2012. (*Id*. at 33, 239).

Griffin was seen by Dr. Martin Jones at Neurological Surgery Associates on July 23, 2012. After reviewing Griffin's x-rays and MRI scan, Dr. Jones stated that he believed Griffin's injury "represents an aggravation of her underlying condition." (R. 294). He concluded that Griffin could return to work without restrictions related to her work injury. (*Id*.) He also noted that "[s]he may [need] restrictions to underlying condition in which case a functional capacity evaluation under private insurance would be appropriate." (*Id*.)

Griffin's November 27, 2012 Northeast Orthopedic Physical Medicine visit notes reveal continued complaints of lower back and leg pain. (R. 34, 335). They also reflect that she moved cautiously and ambulated with decreased stance on the left lower limb. (*Id*. at 34, 334). Griffin indicated during the visit that she was not interested in "revisiting the surgeon." (*Id*. at 335). Dr. Michael Morris arranged for conservative follow-up treatment, including physical therapy. (*Id*.)

**b. The 2014 Records**

The additional records from 2014 consist of a "Physical Capabilities Form" dated February 13, 2014, from Dr. Byron Nelson (R. 9) and a March 17, 2014 MRI report from Ft. Payne Imaging (R. 8). In her reply brief, Griffin abandons her claim concerning the 2014 physical capacity evaluation form from Dr. Nelson "because the report was completed by a nurse practitioner and because Dr. Nelson

had only treated" her once on August 20, 2013. (Doc. 8 at 1). Thus, the remaining claim concerns the Ft. Payne Imaging report.

Griffin argues this imaging report "provides an objective basis for [her] pain and substantiates [her] testimony of pain which the ALJ found was not credible." (Doc. 8 at 2). In support of her contention, she cites *Washington*, wherein the Eleventh Circuit Court of Appeals held that "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." (*Id*. at 16). Specifically, the *Washington* court found that the Appeals Council erred when it did not review an examining physician's opinion dated after the ALJ's decision, where the physician noted that his opinion was premised on the combined effect of Washington's hallucinations and his cognitive abilities, which existed prior to the ALJ's decision. 806 F.3d at 1322-23. Because Washington reported to the doctor that he experienced hallucinations throughout his life and the doctor's records from the relevant period before the ALJ's decision reflected auditory and visual hallucinations, the court found that the doctor offered an opinion that was new, non-cumulative, and chronologically relevant, and the Appeals Council erred when it refused to consider it. *Id*.

New evidence is chronologically relevant if it relates "to the period on or before the date of the [ALJ's] decision."[6] 20 C.F.R. § 404.970(b). Medical treatment that occurs after the relevant time period may be chronologically relevant if the examining doctor offers a new opinion based on records from the relevant time. *See Washington*, 806 F.3d at 1322. Mere proof that the plaintiff's condition has deteriorated or worsened since the relevant period of time is insufficient to show that evidence is chronologically relevant. HALLIX § I-3-3-6(B) n. 2, 1993 WL 643129 ("Evidence is not related to the period at issue when the evidence shows . . . [a] worsening of the condition or onset of a new condition after the date of the ALJ decision."); *see Washington*, 806 F.3d at 1322.

Here, the March 2014 MRI report provides, in pertinent part, that Griffin has a small sub-ligamentous disc protrusion at L2-3 and a mild bony foraminal stenosis[7] at L5-S1. (R. 8). In contrast, her March 2012 MRI report shows mild

---

[6] Internal Social Security policy provides that evidence is new, material, and chronologically relevant if it is:

> 1. Not part of the claim(s) record as of the date of the ALJ decision;
> 2. Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
> 3. Relates to the period on or before the date of the ALJ decision, meaning it is: (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.

Hearings, Appeals and Litigation Law Manuel ("HALLEX") § I-3-3-6(B), 1993 WL 643129.

[7] "Foraminal stenosis refers to the narrowing of the vertebral openings (foramina) that house the spinal nerve roots as they branch off the spinal cord." https://www.laserspineinstitute.com/back_

facet hypertrophy at L4-5 and modest degenerative disc disease with left eccentric foraminal narrowing at L5-S1. (R. 296). She argues this new evidence "provides an objective basis for [her] pain and substantiates [her] testimony of pain which the ALJ found was not credible." (Doc. 8 at 2). Griffin further alleges that the imaging report shows an MRI impression that "obviously" relates back to her accident. (*Id*. at 2). However, Griffin does not provide any evidence or support for her claims of why this additional evidence relates back. Most importantly, the imaging report does not provide any insight into Griffin's condition as it existed in 2012 beyond noting "LBP ON LT SIDE SINCE 3-9-12" as an underlying diagnosis. (R. 8). This is not sufficient to constitute chronologically relevant evidence.

Unlike the situation in *Washington*, there is no indication (1) that the record relates to the period on or before November 22, 2013, the date of the ALJ's decision; (2) that Dr. Ross Barnett, who performed the March 2014 MRI, reviewed or relied on records from the relevant period to determine what Griffin's condition was prior to March 2014; or (3) that Dr. Barnett's opinion relates back to the relevant period. At most the new MRI evidence reflects a worsening of Griffin's condition, or an onset of a new condition, since the relevant time period. The MRI fails to establish that Griffin's condition in March 2014 is consistent with her

---

problems/foraminalstenosis/cervical_spine/ (last visited March 27, 2017).

condition during the relevant period. The Appeals Council did not err in determining that the evidence was about a later time. The court finds that Griffin is not entitled to relief based on her claim that this evidence is chronologically relevant.

Griffin's March 2014 MRI report also is similar to the medical records that the ALJ considered in rendering his decision, which document her seeking help for lower back pain, undergoing lumbar MRIs, and receiving follow-up treatments. (Compare R. 8 with R. 239-44, 261-70, 290-96). Griffin claims that the degenerative changes reflected in the March 2014 report are material because they should impact the ALJ's decision. This court disagrees. The medical records the ALJ considered reflect that the plaintiff sustained "severe degenerative changes" throughout the relevant period. In his decision, the ALJ found that Griffin's impairments did not meet Listing 1.04 because there was "no evidence of compression of a nerve root, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (R. 30). He did, however, fully consider the record evidence. The additional MRI report demonstrates Griffin's condition was unremarkable except for an L5-S1 disc bulge and endplate bar that produces "moderate left and mild right foraminal stenosis." (R. 8). There is no "focal neural

compression," no arachnoiditis, [8] or pseudoclaudication.[9] (R. 8). The record before the ALJ chronicled Griffin's physical examinations and her medical records demonstrated severe degenerative changes, a mild disc bulge, modic changes, and mild foraminal stenosis at L5-S1. (*See* R. 241, 296). Even presuming the 2014 MRI report is chronologically relevant, it does not establish that the ALJ could have reasonably concluded differently had he reviewed these records when evaluating Griffin's claim. Considering the similarities between the additional documents that Griffin submitted to the Appeals Council and the medical records that the ALJ reviewed, this court finds that the new evidence would not have a reasonable possibility of changing the administrative result. Thus, Griffin is entitled to no relief on this claim.

**2. The ALJ's Decision is Supported by Substantial Evidence**

Griffin next argues that the ALJ's decision is not supported by substantial evidence when the additional evidence she submitted to the Appeals Council is considered. (Doc. 6 at 3). The court disagrees. Substantial evidence supports the

---

[8] "Arachnoiditis is a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surrounds and protects the nerves of the spinal cord. It is characterized by severe stinging, burning pain, and neurological problems." http://www.webmd.com/pain-management/guide/pain-management-arachnoiditis#1 (last visited March 25, 2017).

[9] Pseudoclaudication is "[p]ain in the lower extremities that develops when patients are standing for a long time. The pain is relieved by leaning forward or by sitting. It is caused by lumbar spinal stenosis and not by impaired blood flow through the aorta, iliac, or femoral arteries." http://medical-dictionary.thefree dictionary.com/pseudoclaudication (last visited February 15, 2017).

Commissioner's decision when the ALJ's findings are based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Herron v. SSA, Comm'r*, 649 F. App'x 781, 783 n.1 (11th Cir. May 6, 2016) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

The Eleventh Circuit applies a "pain standard" when a plaintiff attempts to prove disability through subjective testimony of pain and other symptoms. The plaintiff must show: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). When a plaintiff's disability claim relies on subjective evidence and her credibility is critical to making a determination, the ALJ must state explicit reasons for discrediting the plaintiff's testimony. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). A reviewing court will not disturb a "clearly articulated credibility finding with substantial supporting evidence in the record."[10] *Id.* at 1562.

[10] The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth. *See* 2016 WL 1119029. The applicability of SSR 16-3p in this case will be discussed below.

Without reweighing the evidence, this court recognizes that the ALJ provided a thorough and detailed explanation of his reasons for discounting inconsistencies in Griffin's testimony compared with the other evidence in the record, including the objective medical evidence. The ALJ discussed and thoroughly cited to objective medical evidence throughout the record and gave all evidence proper weight, including Griffin's symptoms testimony and the opinions and records from examining physicians. Specifically, the ALJ relied on the doctors' impressions and treatment notes. (*See* R. 32-35). For example, the ALJ reviewed the medical records that factored into his findings, accounting for "severe degenerative changes at L5-S2"; however, the ALJ discussed why Griffin's reported activities did not support the level of limitations she alleged. The opinions of examining physicians in the record found Griffin could go back to work without restrictions. The ALJ noted that the physicians' opinions were consistent with objective medical findings. (*See* R. 35). The ALJ discussed such objective medical findings in detail, including the x-ray imaging reports and MRI results. The ALJ clearly articulated why Griffin's description of her pain did not comport with the objective medical evidence or her own testimony about her activities and abilities. (*See e.g.* R. 35). Furthermore, the ALJ discussed how he accounted for each of the symptoms by limiting Griffin to light unskilled work as recommended by the vocational expert. (R. 30-36).

Even considering the additional evidence, substantial evidence still supports the ALJ's finding that Griffin could perform a reduced range of light work. (R. 30-36). By way of example, as of March 2012, the record before the ALJ showed Griffin had no cervical spine tenderness to palpation with no significant musculature spasm or paracervical tenderness and a full range of motion in her neck without pain. (R. 275-76). Griffin was diagnosed with acute muscular spasm and acute lumbar strain. (*Id*. at 276). Griffin's March 23, 2012 MRI showed normal lordotic alignment, unremarkable paravertebral soft tissues, and normal marrow signal. (R. 296). Her L1-5 discs remained preserved, and she had mild facet hypertrophy at L4-L5. (*Id*.) She had modest desiccation at L5-S1, and a small disc bulge and endplate bar. (*Id*.) The overall impression was modest L5 degenerative disc disease with left eccentric foraminal narrowing, no focal disc protrusion or herniation, and facet hypertrophy of the lumbar spine. (R. at 32, 296). In June 2012, Griffin retained strength of 5/5 in her quadriceps, hamstrings, and anterior tibs in her legs. (R. 241). In July 2012, x-rays of her lumbar spine showed no abnormalities. (R. 294). Furthermore, on July 23, 2012, Dr. Jones cleared Griffin to return to work without restrictions. (*Id*.) He also noted a zero impairment rating as to her body as a whole. (*Id*.) As late as November 2012, Dr. Morris examined her, evaluated her back pain, and planned for conservative treatment, including physical therapy such as piriformis stretching, local

modalities, and a home exercise program. (R. 335). Dr. Norris also prescribed a Medrol Dosepak taper for Griffin.[11] (*Id*.)

The additional evidence does not show that the ALJ's decision was incorrect at the time he made the same, months earlier, especially in light of the foregoing medical records that were properly considered by the ALJ. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (noting that while an opinion one year later may be relevant to whether a deterioration in the claimant's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case); *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 802 (11th Cir. 2008) (finding that claims of worse pain properly were not considered when these reports came after the ALJ's decision).

**3. Motion to Remand**

Griffin also moves to have this matter remanded under sentence four of 42 U.S.C. § 405(g) because SSR 16-3p, which supersedes SSR 96-7p, became effective March 28, 2016. (Doc. 11). The Commissioner opposes the remand, arguing that nothing in the ruling indicates that it was intended to apply retroactively. She also asserts that, even if it is to be applied retroactively, the facts and circumstances in this case do not warrant relief. (*Id*.)

---

[11] Medrol Dosepak is the brand name for methylprednisolone, which is classified as a corticosteroid and anti-inflammatory agent. *See* http://reference.medscape.com/drug/medrol-medrol-dosepak-methylprednisolone-342746 (last visited March 28, 2017).

SSR 16-3p expressly states that the Agency eliminates "credibility" from the evaluation of a claimant's subjective symptoms:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.

SSR 16-3p, 2016 WL 1119029 at *1.

Griffin's motion to remand relies heavily on *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214, at *6-8 (C.D. Ill. Aug. 10, 2016). The district court found in *Mendenhall* that the passage of SSR 16-3p warrants retroactive application because the new rules clarifies existing law. That court stated:

> [W]here new rules merely clarify unsettled or confusing areas of law, retroactive application is proper where the promulgating agency has expressed the intent that a new rule is a clarification of an existing rule, though this is not necessarily dispositive.…
>
> For a new rule that clarifies existing law to be applied retroactively, the new rule must be sufficiently similar to the prior rule.… Courts will "defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." ….

*Mendenhall*, 2016 WL 4250214, at *3 (quoting *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)).

United States District Court Judge Virginia E. Hopkins has recently addressed this issue. She stated as follows:

> By its terms, SSR 16-3p replaces SSR 96-7[p]. The effect of the new ruling has been described as follows:
>
>> Both SSR 96-7p and SSR 16-13p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, *i.e.*, the familiar factors identified in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made under those regulations, SSR 16-3p expressly provides that use of the term "credibility" was being eliminated because the SSA regulations did not use it. 81 F.R. at 14167. SSR 16-3p further provides: In [eliminating reference to "credibility"], we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. *Id.* SSR 16-3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations. Rather, the determination or decision must contain specific reasons

> for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms. *Id.* at 14171.

*Lewis v. Colvin*, No. CV 15-00447-KD-B, 2017 WL 583392, at *6-7 (S.D. Ala. Jan. 26, 2017), report and recommendation adopted, No. CV 15-00447-KD-B, 2017 WL 581314 (S.D. Ala. Feb. 13, 2017) (quoting *Martsolf v. Colvin*, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL 77424, *5 (W.D. Mo. Jan. 9, 2017)).

In *McVey v. Commissioner of Soc. Sec.*, 2016 U.S. Dist. LEXIS 93884 *14, 2016 WL 3901385, *5 (M.D. Fla. July 19, 2016), the court applied the new ruling and held that the ALJ erred in basing her credibility determination on the fact that the claimant had made inconsistent statements concerning his sobriety, a matter which was unrelated to his impairment. The court explained the new ruling as follows:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

*Id.* (quoting Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016)).

> *Mendenhall v. Colvin*, 2016 WL 4250214, which was relied upon by Ms. Ring, similarly found remand appropriate because the ALJ's findings amounted to an "attack on Plaintiff's character." *Id.* at *4.
>
> Whether before or after SSR 16-3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms. In doing so, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence "*showing how [the claimant's] impairment(s) and any related symptoms affect [his or her] ability to work.*" 20 C.F.R. § 404.1529(a) (emphasis added). Thus, the ALJ's finding regarding a claimant's statements is limited to such statements that are about the claimant's pain and symptoms. *See* 20 C.F.R. § 404.1529(a) ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.").

*Ring v. Berryhill*, 4:16-cv-0042-VEH, 2017 WL 992174, *12-13 (Mar. 15, 2017) (emphasis and underlying in original).

This court need not further address the issue of retroactivity because, even if SSR 16-3p does apply, the ALJ did not violate it in this case. *See Hargress v. Berryhill*, 4:16-cv-1079-CLS, 2017 WL 588608 (N.D. Ala. Feb. 14, 2017).

The ALJ in the present case properly applied the foregoing legal principles. He found that Griffin's medically determinable impairments could reasonably have been expected to produce some of the symptoms she alleged, but that her statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely credible.[12] That conclusion was in accordance with applicable law. See *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

The ALJ also adequately articulated reasons to support his findings. Specifically, he documented the inconsistency of Griffin's statements with the generally unremarkable findings in the objective medical evidence and her reported daily activities. (R. 32-35). By way of example, the ALJ noted that Griffin complained of debilitating pain, yet "the objective medical evidence does not support the level of limitation alleged." (R. 34). He then states:

> When seen following her on the job accident in March 2012, it was noted she had no significant traumatic injury or tenderness in her musculoskeletal system, and that she had a full range of motion in all of her joints…. X-ray imaging showed no acute fracture in her lumbar spine or in her pelvis. She had a normal lumbar series with only mild degenerative disc space narrowing at L5-S1. When seen at St. Vincent's Orthopedics in May 2012, x-ray imaging was noted to show severe degenerative changes at L5-S1…. However, she was noted to be in no apparent stress. She had minimal pain on extension, and had back flexion fingertip to mid-leg below the knee. She was described as having only mild pain with the range of motion in the left hip and left paraspinal region. As noted previously, in July 2012, she had a negative straight leg raise test, and MRI results of her lumbar

[12] *See* R. 32 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely *credible* for the reasons explained in this decision.") (italics added).

> spine showed normal lordotic alignment. She also had only mild foraminal narrowing on the left and right…. Dr. Jones stated that [she] was able to return to work. In November 2012, [she] was noted as needing no device or assistance to ambulate…. She had the ability to stand on each limb individually, and had no focal sensory or strength deficit in either limb.

(R. 34). Griffin has not cited to any discussion in the ALJ's decision that supports her conclusory contention that the ALJ did not comply with the clarifications in SSR 16-3p. The motion to remand (doc. 11) will be denied.

## VI. CONCLUSION

The Appeals Council was correct in determining that the records from Fort Payne Imaging concerned a later time and were not relevant to the time period before the ALJ's decision. The additional evidence did not meet the standard of being new, material and chronologically relevant. Even if the additional evidence were considered, it fails to show that the ALJ's decision was incorrect and unsupported by substantial evidence. This court finds that the Commissioner's decision is due to be affirmed and Griffin's request for a remand is due to be denied. An appropriate order will be entered.

**DATED** this 29th day of March, 2017.

John E. Ott

**JOHN E. OTT**
Chief United States Magistrate Judge